UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E D
AUG 2 8 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA. VIRGINIA
```

DEBRA L. HAMMOND,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        1:12-cv-01177 (AJT/IDD)
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social Security,    )
                                           )
            Defendant.                     )
                                           )

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 11, 14).[1]  Pursuant to 42 U.S.C. § 405(g), Debra Hammond ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her claim for social security disability benefits ("SSD") and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 – 1383f.  For the reasons stated below, the undersigned finds that there is no evidence warranting remand of Defendant's decision. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

## I.    PROCEDURAL BACKGROUND

On April 5, 2006, Plaintiff filed an application for SSD and SSI alleging her disability began on April 1, 2004 due to fibromyalgia, rheumatoid arthritis, and depression. (Administrative Record "AR" 208-13, 237.)  Plaintiff's initial claim was denied on September 8,

---

[1] Plaintiff's Motion is labeled as a Motion for Summary Judgment or in the Alternative, Motion for Remand.  The Motion is docketed twice as a motion for summary judgment (Dkt. No. 11) and as a motion to remand (Dkt. No. 12).

2006 (AR 112-17) and upon reconsideration on March 29, 2007 (AR 119-28.). On May 23, 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on July 3, 2008 before ALJ G.B. Arthur. (AR 100.)

On October 1, 2008, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within the meaning of the Act. (AR 97.) Plaintiff requested a review of the ALJ's decision and on June 3, 2010, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's claims for further consideration. (AR 92-96.) On November 1, 2010, ALJ Arthur held a second hearing on Plaintiff's claims. (AR 62-87.) On November 23, 2010, the ALJ issued a second decision denying Plaintiff's claims. (AR 16-30.) Plaintiff requested review of the ALJ's second decision and on August 22, 2012, the Appeals Council denied her request for review. (AR 1-3.) The Appeals Council's denial of Plaintiff's request rendered the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g).

On October 22, 2012, Plaintiff filed the instant suit in this Court, challenging the ALJ's decision. (Dkt. No. 1.) On February 19, 2013, the Honorable Anthony J. Trenga referred the cross-motions for summary judgment to the undersigned and this matter is ripe for disposition.

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1965 and was thirty-nine years old as of April 1, 2004, the date she alleges she became unable to work. (AR 65.) Plaintiff has a high school education and has previously worked as a cashier, a home health aide, and a housekeeper. (AR 65-66.)

In her function reports, Plaintiff reported that she lived "alone" and "with son." (AR 244.) Plaintiff marked that she was able to fix her bed, make coffee, watch television, and talk with her friends on a daily basis. (*Id.*) Plaintiff stated that she watched television programs,

2

ordered movies, and listened to music. (AR 249.) Plaintiff indicated that she used public transportation to travel, shopped in stores, and could handle money. (AR 248.) Plaintiff prepared her own meals and picked up around the house. (AR 247.) Plaintiff marked that she was depressed and would stay home, but she did not have a problem getting along with people. (AR 251-52.) Plaintiff described pain in her hips, knees, hands, and lower back, but that these conditions improved with medication. (AR 263-64.)

Plaintiff's primary physician for the relevant time period was Dr. Mert Kivanc. On April 6, 2004, Dr. Kivanc examined Plaintiff and diagnosed her with rheumatoid arthritis. (AR 459.) In his report, Dr. Kivanc described Plaintiff's prognosis as poor. (*Id.*) Dr. Kivanc concluded that Plaintiff could not lift more than five pounds and could not sit or stand for more than thirty minutes at a time. (AR 459.) On April 26, 2004, Dr. Kivanc completed a medical report for the Department of Social Services of the Commonwealth of Virginia. (AR 350.) Dr. Kivanc marked that Plaintiff had rheumatoid arthritis, lumbar spondylosis, and left shoulder rotator cuff syndrome. (AR 350.) On August 9, 2004, Plaintiff returned to Dr. Kivanc complaining of pain, joint swelling, stiffness, and muscle spasms. Dr. Kivanc examined Plaintiff and noted tenderness in the right shoulder and knees. (AR 606.) Dr. Kivanc diagnosed her with rheumatoid arthritis, fibromyalgia, and chronic back pain. (*Id.*)

On December 28, 2004, Dr. Kivanc again examined Plaintiff noting a flat affect, a depressed mood, and tearfulness. (AR 605.) Dr. Kivanc diagnosed Plaintiff with depression. (*Id.*) On March 28, 2005, Dr. Kivanc diagnosed Plaintiff with inflammatory arthritis and myofascial pain syndrome. (AR 452.) Dr. Kivanc checked that Plaintiff was unable to work for more than ninety days at a time and that Plaintiff had work-related limitations with regards to lifting, bending, stooping, reaching for objects, sitting for more than one hour at a time, standing

3

for more than one hour at a time, and walking more than fifty feet. (AR 452-53.) Dr. Kivanc also saw Plaintiff on April 29, 2005 and June 1, 2005 for treatment of arthritis in her knees. (AR 601-03.)

On July 25, 2005, Dr. Kivanc completed a form for the Department of Social Services of the Commonwealth of Virginia. (AR 318.) Dr. Kivanc listed Plaintiff's diagnosis as rheumatoid arthritis and opined that Plaintiff was unable to stand for more than ten minutes at a time and unable to lift more than five pounds. (*Id.*) On April 11, 2006, Dr. Kivanc completed another medical evaluation form listing fibromyalgia, polyarthritis, and palindromic rheumatism as bases for the "patient's inability to work." (AR 462-63.) On May 3, 2006, Dr. Kivanc requested lumbosacral spine and knee x-rays. (AR 598.) Multiple views of the lumbar spine showed no fracture or subluxation, and the study was deemed normal. (*Id.*) There was also no indication of joint effusion, fractures, dislocations or other significant bone lesions in x-rays of Plaintiff's knees. (*Id.*)

On September 21, 2007, during a routine office visit, Dr. Kivanc listed his "impressions" as degenerative joint disease, lumber radiculopathy, chronic intractable pain, and mild depression. (AR 589.)   On October 29, 2007, during another routine office visit, Dr. Kivanc listed in the "impression" section that Plaintiff was progressing well with physical therapy. (AR 588.)

On December 2, 2007, Dr. Kivanc completed a Fibromyalgia Impairment Questionnaire regarding Plaintiff. (AR 505-10.) Dr. Kivanc indicated that Plaintiff met the American Rhematological criteria in place at the time for fibromyalgia and diagnosed depression and palindromic rheumatism. (AR 505.) Dr. Kivanc opined that Plaintiff was capable of performing low stress jobs. (AR 508.) Dr. Kivanc concluded that the symptoms and limitations described in

4

the questionnaire had been present since 2007. (AR 510.) Dr. Kivanc listed Plaintiff's prognosis as "guarded." (AR 505.)

Plaintiff received subsequent treatment for polyarthritis, fibromyalgia, and depression through February 26, 2008. (AR 584-87.) In April 2008, Dr. Kivanc requested hip x-rays, which were "unremarkable" and showed "no hip abnormality." (AR 579.)

While Dr. Kivanc was on sabbatical leave, on March 26, 2009, Dr. Mobeen Choudhri met with Plaintiff for "presented symptoms" related to polyarthritis, fibromyalgia, and degenerative disc disease at C3-C4 with a herniated disc. (AR 566.) Dr. Choudhri wrote in a "To Whom it May Concern" letter that Plaintiff was unable to sit, stand, or walk for more than one to two hours at a time and thus, could not likely work full-time. (*Id.*) Dr. Choudhri opined that with her medication regiment Plaintiff could perform her activities of daily living. (*Id.*)

On August 30, 2006, Dr. Shaikh Farook consultatively examined Plaintiff at the request of the state agency. (AR 473-78.) Dr. Farook noted that Plaintiff could walk into the exam room, get on the exam table without assistance, and undress herself. (AR 474.) Dr. Farook found no redness, swelling, atrophy, or scarring of any of Plaintiff's joints. (AR 475.) There was no deformity of the wrists, hands, elbows, knees, or ankles. (*Id.*) Dr. Farook found slightly decreased range of motion of the shoulder, back, hips, and knees and slightly decreased grip strength. (AR 475-76.) Neurologically, Dr. Farook found Plaintiff alert and oriented with normal higher cerebral functioning and no sensory defects. (AR 475.) Dr. Farook provided no opinion on any potential functional limitations.

In September 2006, Dr. Luc Vinh, the state agency physician, reviewed the evidence in connection with Plaintiff's application. (AR 480-86.) Dr. Vinh concluded that Plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand and/or walk for at least

two hours in an eight hour workday, must periodically alternate between sitting and standing which could be accommodated by normal work breaks, and was limited in her upper extremity push/pull ability. (AR 481.) Dr. Vinh determined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 482.) Dr. Vinh found Plaintiff's description of her daily activities as "partially credible." (AR 485.) Dr. Vinh highlighted that Plaintiff did not attend physical therapy and did not require an assistive device to ambulate. (*Id.*)

Also in September 2006, Dr. Yvonne Evans, the state agency psychologist, reviewed evidence in connection with Plaintiff's case. (AR 488-500.) Dr. Evans determined that Plaintiff had no mental disorders except a depressive disorder and that Plaintiff's depressive disorder resulted in only mild limitations/difficulty. (AR 491, 498.) Dr. Evans emphasized Plaintiff's ability to prepare meals, use public transportation, shop, handle finances, watch television, listen to the radio, and talk with friends as evidence that Plaintiff's daily activities were only mildly affected by her depression. (AR 500.)

On March 3, 2009, Dr. Gurpreet Bajwa began treating Plaintiff. (AR 556.) On June 18, 2009, Dr. Bajwa prescribed medicine for treatment of Plaintiff's symptoms. (AR 555.) Dr. Bajwa described Plaintiff's impairments as stable. (AR 553.) Dr. Bajwa refilled Plaintiff's prescriptions on October 5, 2009 and November 11, 2009. (AR 550-51.) Dr. Bajwa treated Plaintiff through August 23, 2010. (AR 683-87.)

On July 3, 2008, Plaintiff testified at the hearing before the ALJ. (AR 33.) Plaintiff testified that she last worked in 2004. (AR 35.) Plaintiff stated that she could walk approximately two blocks before her hips "start wearing out" and could occasionally lift about ten to twenty pounds. (AR 37-39.) Plaintiff described her depression and its worsening since its onset. (AR 39.) Plaintiff testified that she could prepare light meals, make the bed, do dishes,

and grocery shop. (AR 41-42.) Plaintiff's son assisted her in household cleaning and she stopped vacuuming, dusting, and sweeping two years prior to the hearing because it was "too heavy" for her. (AR 42.) Plaintiff stated that she did not drive, but was able to manage her own finances. (AR 43.) Plaintiff had some difficulty dressing and grooming. (AR 52.) Plaintiff asserted that she could sit in a chair for thirty to forty-five minutes at a time. (AR 49.)

On November 1, 2010, Plaintiff again testified at the hearing before the ALJ. (AR 62.) Plaintiff stated that she could sit for forty minutes at a time and stand for twenty to thirty minutes at a time. (AR 73-74.) Plaintiff explained that pain in her thighs caused her to stand up and move around to reduce swelling. (AR 77-78.) Plaintiff said that the swelling interfered with her ability to wash clothes, to retrieve her mail from the mailbox, to get dressed, to groom herself, and to hold a coffee mug. (AR 78.) Plaintiff acknowledged taking care of her two grandchildren, ages four and five, while her daughter worked. (AR 80-81.)

A vocational expert, Dr. James Michael Ryan, also testified at the November 1, 2010 hearing before the ALJ. (AR 81-87.) The vocational expert testified that Plaintiff, as described by the ALJ, could perform the occupations of laundry worker, general office worker, packer and packaging worker, security worker, order taker, and finish machine tender. (AR 83-86.)

### III.   ANALYSIS

#### A. Determining Disability and Sequential Analysis

To qualify for SSI under § 1382 of the Act, a person under age sixty-five must be disabled and meet income requirements. 42 U.S.C. §1382(a). For this purpose, the Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To meet this definition, the claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

The Commissioner follows a five-step sequential analysis to determine whether a claimant is disabled. Specifically, the ALJ must consider whether the claimant (1) is engaged in substantial gainful activity;[2] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the SSA's official listing of impairments; (4) has an impairment that prevents past relevant work;[3] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. § 416.920(a)(4).

## B. ALJ's Findings

Conducting the sequential analysis, the ALJ proceeded through each step and rendered two adverse findings. First, the ALJ found that Plaintiff met the insured status requirement through June 30, 2009 and had not engaged in substantial gainful activity since April 1, 2004. (AR 21.) Next, the ALJ concluded that Plaintiff suffered from the following severe impairments: "fibromyalgia, depression and polyarthritis." (*Id.*) However, the ALJ determined that these impairments did not amount to a condition contained within the SSA's official listing of impairments. (AR 23.) The ALJ concluded that the "evidence of the record does not

---

[2] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a) & 404.1565(a).

demonstrate inflammatory arthritis" sufficient to meet the required symptoms. (AR 23-24.) The

ALJ also determined that Plaintiff's mental impairment did not meet or medically equal the

criteria listing of 12.04 or "paragraph B" criteria. (AR 24.)

> The ALJ determined that Plaintiff had the residual functional capacity:
>
> to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant cannot climb ladders, ropes or scaffolds, be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes as a precautionary measure. She retains the ability to occasionally climb stairs and ramps, to balance, to stoop and to crouch, but does not retain the ability to perform work involving kneeling or crawling. She requires low stress work (work requiring no more than moderate attention, concentration, persistence and pace for prolonged periods) due to mental functioning and physical/neurological problems. She experiences moderate pain and fatigue. She must avoid concentrated exposure to excessive vibration. She must avoid excessive dust, fumes, chemicals, and excessive humidity or wetness. She is precluded from work requiring the use of push/pull controls with legs. She requires the option to alternative [sic] between sitting and standing such that no more than half an hour is required to either sit or stand at any one time. She has moderate limitations as to completing a normal workweek or workday without interruptions from psychological and physical limitations, and as to performing at a consistent pace without an unreasonable number and length of rest periods. She should have no direct, intermediate contact with the general public on a regular basis, but is not precluded from all contact with the general public. She has moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors and interacting with getting along with co-workers and peers.

(AR 25 (footnote omitted).) The ALJ found that Plaintiff was unable to perform past

relevant work. (AR 28.) Based on Plaintiff's functional limitations the ALJ concluded

that, considering her age, education, work experience, and residual functional capacity,

"there were jobs that existed in significant numbers in the national economy that the

claimant could have performed." (AR 29.)

As a result of the ALJ's determination that Plaintiff's impairments did not equal one of

the listed impairments and that jobs exist in significant numbers in the national economy that

Plaintiff can perform, the ALJ found that Plaintiff was not disabled within the meaning of the

9

Act at any time between April 1, 2004, the alleged onset date, through June 30, 2009, the date last insured. (AR 30.)

## C. Cross-Motions for Summary Judgment

The Plaintiff raises three primary issues in this action: (1) whether the ALJ followed the Appeals Council Remand Order; (2) whether the ALJ failed to follow the treating physician rule; and (3) whether the ALJ failed to properly evaluate Plaintiff's credibility. Defendant seeks summary judgment on the ground that the ALJ's decision is supported by substantial evidence, and therefore, should be affirmed.[4] The undersigned will address each of Plaintiff's objections to the ALJ's decision in turn.

### 1. ALJ's Duty to Follow the Appeals Council Remand Order

Plaintiff alleges that the ALJ failed to follow the Appeals Council Remand Order when the ALJ did not request testimony from a rheumatologist regarding whether Plaintiff's impairments met or equaled a medical listing and that this constitutes reversible error. (Pl.'s Mem. Supp. Mot. Summ. J. at 13.)

The Social Security Regulations provide that the ALJ "shall take any action that is ordered by the Appeals Council." 20 CFR § 404.977(b). This Circuit has employed the harmless error analysis in the context of social security disability determinations and an ALJ's failure to follow an order of the Appeals Council. *See Huddleston v. Astrue*, 826 F. Supp. 2d 942, 955 (S.D. W. Va. 2011) (citing *Morgan v. Barnhart*, 142 Fed. Appx. 716, 722-34 (4th Cir. 2006) (unpublished); *Bishop v. Barnhart*, 78 Fed. Appx. 265, 268 (4th Cir. 2003) (unpublished)).

---

[4] The Parties Joint Motion to Vacate Initial Scheduling Order and Estabilsh Briefing Schedule (Dkt. No. 9) was approved by the Honorable Anthony J. Trenga on January 29, 2013. (Dkt. No. 10.) The Order set a briefing schedule requiring that any dispositive motions be filed by February 18, 2013, and any memorandum in opposition be filed by March 4, 2013. Plaintiff did not file an Opposition to Defendant's Motion for Summary Judgment.

The Appeals Council's Order states,

> Upon remand the Administrative Law Judge will . . . [c]onsider the additional evidence submitted by the claimant's attorney and seek medical expert testimony from a rheumatologist to clarify whether the claimant's impairments meet or equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 and, as appropriate, the question of the claimant's residual functional capacity.

(AR 94.) Upon remand, the ALJ did not seek medical expert testimony from a rheumatologist.

In addressing the ALJ's requirement to follow the Appeals Council's Order, the ALJ stated,

> The undersigned has tried [sic] meet the requirements outlined by the Appeals Council and fully considered all the evidence.  No treating or examining physician has medically documented or supported a listing level impairment and therefore the undersigned finds the issue can be addressed without referral to a medical expert such as a rheumatologist for a review long after her date last insured.  The evidence simply does not warrant the same in light of the review of all available medical evidence available and the sworn testimony of the claimant as to activities she was able to engage in during the period under review which totally undercuts the same.

(AR 23.)

The undersigned finds that the ALJ's failure to follow the directives of the Appeal's Council Order constitutes legal error, but this does not necessitate remand unless the error results in harm to the claimant. *See Huddleston*, 826 F. Supp. 2d at 955.  Plaintiff must show that the Commissioner's decision "might reasonably have been different had that evidence been before [the ALJ] when [his] decision was rendered." *King v. Califano*, 599 F.2d. 597, 599 (4th Cir. 1979).

In her memorandum, Plaintiff primarily addresses the fact that the ALJ did not follow the Appeals Council Order and does not address the harm caused by this failure.  Plaintiff does state that the ALJ's failure to follow the Order was "prejudicial because if a rheumatologist testified that any of the Listings were met or equaled a finding of disability would be required for [Plaintiff]." (Pl.'s Mem. Supp. Mot. at 14.)  However, the ALJ expressly stated that there was

insufficient evidence in the record for a rheumatologist to conclude that a medical listing was met and that Plaintiff's own testimony undercut any potential finding, even by a rheumatologist, that she met a medical listing. Thus, even if the ALJ had consulted a rheumatologist per the Appeals Council Order, the evidence in the record demonstrates that the ALJ would not have rendered a different decision. Moreover, at the conclusion of the ALJ's analysis regarding Plaintiff's residual functional capacity, the ALJ again stresses that there is insufficient evidence in the record to warrant a medical expert examining the record to determine whether Plaintiff met a listing which provides further basis for this Court to determine that even if a rheumatologist had been consulted, the ALJ would not have changed his decision, and thus, the error was harmless.

Based upon the ALJ's decision in its entirety, the Court determines that there is no evidence that the ALJ's failure to follow the Appeals Council Order constitutes reversible error.

## 2. ALJ's Application of the Treating Physician Rule

Plaintiff contends that the ALJ failed to follow the treating physician rule with regard to Dr. Kivanc, Dr. Choudhri, and Dr. Bajwa. (Mem. Supp. Mot. Summ. J. at 14, 16-19.)

Opinions from treating physicians must be given controlling weight if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and the opinions are not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(d)(2); *Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996). Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the

12

evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(i–ii), (d)(3)–(5).  The ALJ need only be specific enough to allow a reviewing court to determine the weight given to a medical source and the reasons for that weight. *See* SSR 96-2p, 1996 WL 374188, at * 5.

The ALJ gave "little weight" to Dr. Kivanc's opinion for three reasons.[5]  (AR 27.)  First, the ALJ explains that some of Dr. Kivanc's statements such as labeling Plaintiff as "disabled and unable to work" are not medical opinions, but rather determinations that are reserved for the Commissioner.  Second, the ALJ noted that Dr. Kivanc's notes first labeled Plaintiff's condition as "poor" and then later in December 2007, Dr. Kivanc labeled Plaintiff's prognosis as "guarded"—an improvement over "poor" showing Plaintiff's condition improved over the course of treatment.  Third, the ALJ pointed out that Plaintiff's admissions as to her activities of daily living during the periods in question undercut Dr. Kivanc's opinion.

The ALJ also gave little weight to Dr. Choudhri's opinion for similar reasons. (*Id.*)  The ALJ again pointed out that Dr. Choudhri's statements regarding whether Plaintiff was able to work were determinations left to the Commissioner, and that Plaintiff's admissions undercut Dr. Choundhri's findings.  The ALJ also highlighted inconsistences in Dr. Choudhri's notes, i.e. that Plaintiff could not sit, stand, or walk for more than one or two hours, but that Plaintiff could complete activities of daily living without medication, as another basis for giving little weight to his opinion.

The ALJ correctly followed the treating physicians rule in determining the proper weight given to the opinions of Dr. Kivanc and Dr. Choudhri.  The ALJ must only give controlling

---

[5] The ALJ states that he gives Dr. Kivanc's opinion "little weight for two reasons," but he in fact provides three reasons.  (AR 27.)

weight to treating physicians if their opinions are not inconsistent with other substantial evidence in the record. In the instant case, the ALJ expressly found that Dr. Kivanc's and Dr. Choudhri's opinions were contradicted by Plaintiff's own testimony. The ALJ provided specific reasons for his determination to give both doctors' opinions little weight and sufficiently articulated those reasons for the Court to determine the ALJ's reasoning. The ALJ's stated reasons relate specifically to those factors outlined in the regulation—the evidence with which the physician supports his opinion and the consistency of the opinion. The case law requires no further specificity from the ALJ.

The ALJ does not discuss the opinion of Dr. Bajwa. Dr. Bajwa treated Plaintiff from March 2009 through August 2010. However, Plaintiff's last insured date is June 30, 2009, and thus, for purposes of the ALJ's determination, Dr. Bajwa only treated Plaintiff for just over three months. As Plaintiff concedes "Dr. Bajwa did not give an opinion on [Plaintiff's] functioning until after the date last insured." (Pl.'s Mem. Supp. Mot. Summ. J. at 18.) The first documentation in the record by Dr. Bajwa is not a treatment record, but rather a "Multiple Impairment Questionnaire"—and appears to have been completed after Plaintiff's last insured date.[6] (AR 534-42.) Of Dr. Bajwa's medical records (AR 554-96) in the Administrative Record, only four pages fall within the dates during which Plaintiff was insured.[7] (*See* AR 554-57.) These pages do not detail any of Plaintiff's impairments other than listing that she suffers from fibromyalgia and other ailments and listing the medicines prescribed by Dr. Bajwa. Dr.

---

[6] On the Questionnaire, Dr. Bajwa lists the date of the most recent exam as June 22, 2010—almost a year after Plaintiff's last insured date, June 30, 2009. (AR 535.)

[7] Notably, in Plaintiff's Memorandum in Support of the Motion for Summary Judgment, in the "Relevant Medical Evidence" section, Plaintiff discusses Dr. Bajwa as the treating family practitioner for a page and a half. With regards to the dates while Plaintiff was insured, Plaintiff only states that Dr. Bajwa noted Plaintiff's past medical history and on June 18, 2009, proscribed three medicines for her symptoms. The remaining page of medical evidence cited by the Plaintiff regarding Dr. Bajwa occurred after Plaintiff's last insured date. (Pl.'s Mem. Supp. Mot. Summ. J. at 7-8.)

Bajwa checked boxes during these visits indicating that Plaintiff had no chest pain, no fatigue, no depression, etc., but does not provide any details that would have assisted the ALJ in determining whether Plaintiff's impairments met a listing. The Plaintiff cites no requirement that the ALJ address every document provided in the record and specifically when the documents do not provide insight into Plaintiff's functioning until after the date insured. Thus, the undersigned finds there is no reversible error in the ALJ's failure to discuss Dr. Bajwa's opinion.

Based upon the ALJ's decision in its entirety, the undersigned finds that the ALJ sufficiently articulated his bases for giving little weight to the opinions of Dr. Kivanc and Dr. Chouhdri and that the ALJ was not required to address the four pages of treatment records provided by Dr. Bajwa. Thus, the undersigned recommends finding no error in the ALJ's treatment of the opinions of Dr. Kivanc, Dr. Chouhdri, and Dr. Bajwa.

### 3. ALJ's Determination of Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to properly evaluate Ms. Hammond's credibility. (Mem. Supp. Mot. Summ. J. at 20.)

Specific findings are necessary if a claimant's testimony is to be found not credible. *See Smith v. Heckler*, 782 F.2d 1176 (4th Cir. 1986); *Hammond v. Heckler*, 765 F.2d 723 (4th Cir. 1985); *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984). If credibility determinations are based upon improper or irrational criteria, they cannot be sustained. *Breeden v. Weinberger*, 493 F.2d 1002 (4th Cir. 1974). Credibility determinations must refer specifically to the evidence forming the administrative law judge's conclusion, as the duty of explanation is always an important part of the administrative charge. *Hatcher v. Secretary*, 898 F.2d 21 (4th Cir.1989). Social Security Ruling 96–7p states that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or

are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

Rather, SSR 96–7p requires that the decision contain "specific reasons" for the credibility finding, which is supported by the evidence in the case record, and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

The ALJ concluded, "after careful consideration of the evidence, the undersigned finds that . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 26.) The ALJ sets forth many statements by Plaintiff as his basis for finding her statements not credible. The ALJ noted Plaintiff's admittance that her daughter works and that her two grandchildren, ages four and five, are left with Plaintiff during the day under her care. (*Id.*) The ALJ concluded that the objective medical findings do not substantiate Plaintiff's claimed limitations from her fibromyalgia and polyarthritis citing normal x-rays of Plaintiff's hips, normal lumbar spine and pelvis examinations, an electromyography noting only middle abnormality, and only middle chronic radiculopathy. (*Id.*) The ALJ also cited Dr. Shaikh's report that claimant could walk into the exam room and get on the table without assistance, dress and undress herself, and did not require an ambulatory aid. (*Id.*) Additionally, the ALJ noted that Plaintiff could perform activities of daily living when taking prescribed medicine. (AR 26-27.)

Moreover, the ALJ specifically stated that Plaintiff's residual functional capacity is a product of her testimony. The ALJ stated that he gave Plaintiff the "benefit of the doubt and adjusted her residual functional capacity to accommodate her limitations." (AR 28.)

16

Based upon the ALJ's decision in its entirety, the Court determines that the ALJ sufficiently articulated his determination of the proper weight given to Plaintiff's testimony and thus, the undersigned finds no error in the ALJ's determination that certain statements by Plaintiff were not credible.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge finds the ALJ's decision does not contain legal error necessitating reversal or remand.    Therefore, the undersigned recommends Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## V.    NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows.  Objections to this Report and Recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this Report and Recommendation.  A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to both counsel of record.

_/s/_

Ivan D. Davis
United States Magistrate Judge

August 28, 2013
Alexandria, Virginia

17